IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

JUL 1 3 2018

DOUGLAS F. YOUNG, Clerk
By
                   Deputy Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF ARKANSAS,     )<br>)<br>)<br>Plaintiffs,    )<br>)<br>v.    )<br>)<br>DELEK LOGISTICS OPERATING LLC )<br>and SALA GATHERING SYSTEMS LLC, )<br>)<br>)<br>Defendants.    )<br>) | Civil Action No. 18-1040 |

## COMPLAINT

The United States of America, acting on behalf of the United States Environmental Protection Agency ("EPA"), by authority of the Attorney General of the United States, and the State of Arkansas, acting on behalf of the Arkansas Department of Environmental Quality ("ADEQ"), by authority of the Arkansas Attorney General, file this Complaint and allege as follows:

## NATURE OF ACTION

1.      This is a civil action against Delek Logistics Operating LLC ("Delek") and SALA Gathering Systems LLC ("SALA," and collectively, the "Defendants") arising from Defendants' unlawful discharge of more than 5,890 barrels of crude oil on or about March 8 and 9, 2013. The discharge occurred when a suction strainer ruptured at Defendants' pump station and tank facility in Magnolia, Arkansas. The oil spilled from the ruptured strainer into nearby waterways, including an unnamed creek and Little Cornie Bayou. Defendants' oil contaminated waterways and impacted wildlife and habitat.

2.      The United States seeks civil penalties and injunctive relief under Sections 301, 309 and 311 of the Clean Water Act ("CWA").  The United States brings the following causes of action:

a.  A claim for civil penalties under Section 311(b)(7)(A) or (D), 33 U.S.C. § 1321(b)(A), (D), for the unlawful discharge of oil;

b.  A claim for civil penalties under Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C), for Defendants' failure to: (1) prepare their Spill Prevention, Control, and Countermeasure Plan ("SPCC Plan") in accordance with good engineering practices, (2) include in their SPCC Plan a prediction of the direction, rate of flow, and total quantity of oil that could be discharged from each type of major equipment failure, and (3) provide appropriate secondary containment for the area surrounding the ruptured strainer, each in violation of 40 C.F.R. Part 112 (*Oil Pollution Prevention*);

c.  A claim for injunctive relief under Section 309(b), 33 U.S.C. § 1319(b), for Defendants' violation of Section 301, 33 U.S.C. § 1311.

3.      The State of Arkansas seeks civil penalties pursuant to the Arkansas Water and Air Pollution Control Act and the Arkansas Hazardous Waste Management Act.  The State of Arkansas brings the following causes of action:

a.  A claim for civil penalties under the Arkansas Hazardous Waste Management Act, Ark. Code Ann. §§ 8-7-201 – 227, for improper manifesting, transportation, and disposal of hazardous wastes;

- 2 -

b.  A claim for civil penalties and injunctive relief under the Arkansas Water and Air Pollution Control Act, Ark. Code Ann. §§ 8-4-101 – 409, for water pollution violations.

## JURISDICTION, VENUE, AND AUTHORITY

4.  This Court has subject matter jurisdiction over claims brought by the United States in this action under the CWA and its implementing regulations, pursuant to Sections 309(b) and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E), and under 28 U.S.C. §§ 1331, 1345 and 1355.  This Court has supplemental jurisdiction over the State's claims under 28 U.S.C. § 1367(a) (supplemental jurisdiction).

5.  Authority to bring this action on behalf of the United States is vested in the United States Department of Justice by, *inter alia*, Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

6.  Authority to bring this action on behalf of the State of Arkansas is vested in ADEQ, pursuant to Ark. Code Ann. §§ 8-4-103(b) and 8-7-204(b), and the Office of the Attorney General, pursuant to Ark. Code Ann. § 26-16-702(e).

7.  Venue is proper in the Western District of Arkansas under Sections 309(b) and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E), because Defendants are doing business in this District.

## PARTIES

8.  Plaintiff, the United States of America, is acting at the request of EPA.  EPA serves as the lead federal agency in the oversight of the oil spill cleanup efforts in Magnolia, Arkansas, and has authority to enforce the provisions of the CWA.

- 3 -

9.      Plaintiff, the State of Arkansas, is acting at the request of ADEQ.  ADEQ serves as the lead state agency in the oil spill cleanup efforts in Magnolia, Arkansas.  The State has both statutory and common law authority to enforce the State's environmental laws in order to preserve, protect, and conserve Arkansas' environment.  The State of Arkansas further has the authority to uphold the provisions of those environmental programs delegated to the State by the EPA.

10.      Defendant, Delek, is the operator of the Magnolia Station.  Defendant is a Delaware limited liability company and has headquarters in Brentwood, Tennessee.

11.      Defendant, SALA, is the owner of the Magnolia Station.  Defendant is a Texas limited liability company and has headquarters in Brentwood, Tennessee.

12.      Delek and SALA are each a wholly-owned subsidiary of Delek Logistics Partners, LP.

## GENERAL ALLEGATIONS

13.      At all times relevant to this Complaint, the Magnolia Station, together with all of its appurtenances, including the strainer that ruptured on or about March 8, 2013, are or were owned by SALA and operated by Delek.

14.       The Magnolia Station is an oil storage, transfer, and pump station.  Defendants' pipeline system transports oil to the Magnolia Station from oil production and gathering facilities in southern Arkansas and northern Louisiana.  From the Magnolia Station, the oil is transported to a refinery in El Dorado, Arkansas, that is owned by a corporate affiliate of Defendants.

15.      There are at least four oil tanks at the Magnolia Station, with a total storage capacity of more than 135,000 barrels.  The gathering system owned by SALA includes about 54 crude oil storage and breakout tanks with a capacity of approximately 800,000 barrels within the

States of Arkansas and Louisiana.  SALA's gathering system is comprised of about 600 miles of pipeline.

16.     Defendants, and/or an affiliated corporation, maintain a control center located in El Dorado, Arkansas, for the purpose of remotely controlling and monitoring operations at the Magnolia Station, among other purposes.  Defendants' and/or an affiliated corporation's operators at the control center continuously receive data concerning pipe pressure and flow rate at the Magnolia Station.

17.     On March 8, 2013, at about 7:23 p.m., operators in the control center shut down Pump No. 6 and started up Pump No. 4 at the Magnolia Station.  Sometime after this stop-start sequence, an underground strainer upstream of Pump No. 6 ruptured.  The strainer was more than 60 years old, and at the rupture point, heavily corroded.

18.     From the rupture point, oil flowed out of the strainer, saturated the soil, and flowed across the facility.

19.     The discharged oil pooled in a small containment pond in the southeastern portion of the facility.  The pond was not designed to contain discharges from pipelines such as the ruptured strainer.  Instead, it was designed to contain much smaller discharges, such as discharges from loading and/or unloading trucks.

20.     Trees, other vegetation, and sediment clogged the pond, reducing its capacity.

21.     The containment pond failed to retain the oil.  Oil flowed out of the pond into a drainage ditch beyond the boundaries of the facility, and from the drainage ditch into an unnamed creek.

22.     For more than 13 hours, oil flowed from the strainer, across the facility to the pond, spilled from the pond to the drainage ditch, and to the unnamed creek, impacting a beaver

dam area.  Defendants' spilled oil then flowed further downstream into Little Cornie Bayou, a perennial tributary that flows to Cornie Bayou, and from Cornie Bayou into Lake D'Arbonne. Lake D'Arbonne flows through Bayou D'Arbonne to the Ouachita River.

23.     Defendants' spilled oil caused, *inter alia*, a film or sheen upon or discoloration of the surface of the water and adjoining shorelines and caused a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines.  Overall, the oil impacted about 3.5 miles of the unnamed creek and Little Cornie Bayou.

24.     Since at least 2012, Defendants have had an SPCC Plan for the Magnolia Station as required under 40 C.F.R. Part 112.

25.     Defendants' experience indicates a reasonable potential for failure of the underground pipeline equipment in the area of the ruptured strainer, including without limitation the ruptured strainer.

26.     After the spill, Defendants inspected the ruptured strainer and determined that at the point of rupture the condition of the pipe was severely pitted and corroded.

27.     Before the oil spill, Defendants knew that components such as the ruptured strainer and the check valve were in disrepair and at risk of failure.

28.     Defendants have no record of any maintenance or inspection performed on the ruptured strainer prior March 8, 2013.

29.     Defendants' SPCC Plan did not include a prediction of the direction, rate of flow, and total quantity of oil that could be discharged from the facility as a result of each type of major equipment failure, such as a rupture of underground pipeline equipment, including the ruptured strainer.

30.    Defendants had not installed appropriate containment, such as berms or a dike system, diversionary structures or other equipment, to contain a discharge of oil from the area of the facility where the oil spill occurred.

31.    The discharge of the oil caused and may continue to cause pollution to the waters of the State.

32.    Defendants submitted to ADEQ the results from soil sampling events conducted on March 25, 2013, and March 29, 2013.  The test results showed benzene was present at concentrations exceeding the toxicity characteristic leaching procedure ("TCLP") regulatory criteria of 0.5 parts per million (ppm).

33.    Soil contaminated with benzene above the TCLP criteria is a hazardous waste under Arkansas Pollution Control and Ecology Commission ("APC&EC") Regulation 23, § 261.24 and Table 1.

34.    Defendants generated hazardous waste by removing the contaminated soil.

35.    Defendants transported hazardous waste using "non-hazardous" manifests.

36.    Defendants disposed of hazardous waste in a landfill not permitted to accept hazardous waste.

37.    On August 15, 2013, ADEQ conducted a sampling investigation of the entire spill pathway.  The results of this investigation revealed environmental contamination by hazardous substances found in the oil released by Defendants.  Hazardous substances detected include, but are not limited to, benzene, toluene, ethylbenzene, and xylene.  ADEQ also observed the presence of oil and oily sheens.  The detection of oil-related constituents and the observation of oily sheens on August 15, 2013, demonstrate that the areas impacted by the release of the crude oil require remediation and restoration.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Civil Penalties for Violations of CWA Section 311(b) – Oil Discharge
33 U.S.C. § 1321(b)**

38.     Paragraphs 1 through 30 are realleged and incorporated herein.

39.     Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), prohibits the "discharge

of oil or any hazardous substances (i) into or upon the navigable waters of the United States, [or]

adjoining shorelines … in such quantities as may be harmful …."

40.     Under Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), "[a]ny

person who is the owner, operator, or person in charge of any … onshore facility … from which

oil … is discharged in violation of paragraph (b), shall be subject to a civil penalty …."

41.     Civil penalties may be increased if the violation results from "gross negligence or

willful misconduct."  33 U.S.C. § 1321(b)(7)(D).

42.     Enforcement of these provisions supports the national objective to prevent and

deter oil spills and "to restore and maintain the chemical, physical, and biological integrity of the

Nation's waters."  33 U.S.C. §§ 1321(b)(1), 1251(a).

43.     Defendants are each a "person" within the meaning of Section 311(a)(7) of the

CWA, 33 U.S.C. § 1321(a)(7).

44.     Delek is the "operator" of an onshore facility from which oil was discharged,

within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6).

45.     SALA is the "owner" of an onshore facility from which oil was discharged,

within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6).

46.     Defendants' strainer that ruptured on or about March 8, 2013, at the Magnolia Station was an "onshore facility," within the meaning of Section 311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10).

47.     The spilling of oil from the strainer at the Magnolia Station was a "discharge" of oil, within the meaning of Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2).

48.     The discharge was of "oil," within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

49.     The discharge of oil was into or upon the waters of the United States, within the meaning of Sections 311(b)(3) and 502(7) of the CWA, 33 U.S.C. §§ 1321(b)(3) and 1362(7), and adjoining shorelines.

50.     The discharge was in a quantity "as may be harmful," within the meaning of Sections 311(b)(3) and (4) of the CWA, 33 U.S.C. § 1321(b)(3) and (4), and 40 C.F.R. § 110.3.

51.     Defendants' discharge of oil violated Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

52.     Under Section 311(b)(7)(A) of the CWA, Defendants are liable for civil penalties of up to $1,100 per barrel of oil discharged.  33 U.S.C. § 1321(b)(7)(A); *see* 40 C.F.R. § 19.4 (establishing that the Civil Monetary Penalty Inflation Adjustment Rule increased the per-barrel civil penalty to the listed amounts, effective after January 12, 2009).  Under Section 311(b)(7)(D) of the CWA, if it is determined that Defendants' violations of Section 311(b)(3) were the result of gross negligence or willful misconduct, Defendants are liable for not more than $4,300 per barrel of oil discharged.  33 U.S.C. § 1321(b)(7)(D); *see* 40 C.F.R. § 19.4.

### SECOND CAUSE OF ACTION

**Civil Penalties for Failure to Comply with Regulation**
**33 U.S.C. § 1321(b)(7)(C); 40 C.F.R. § 112.7, 112.7(b), 112.7(c)**

53.     Paragraphs 1 through 30 and 38 through 52 are realleged and incorporated herein.

54.     Under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), the President "shall issue regulations … establishing procedures, methods, and equipment and other requirements for equipment to prevent discharges of oil and hazardous substances from vessels and from onshore facilities and offshore facilities and to contain such discharges …."

55.     Under the authority established by 33 U.S.C. § 1321(j), the EPA promulgated 40 C.F.R. Part 112 (*Oil Pollution Prevention*), including 40 C.F.R. § 112.7 (*General requirements for Spill Prevention, Control, and Countermeasure Plans*) and 40 C.F.R. § 112.8 (*Spill Prevention, Control, and Countermeasure Plan Requirements for Onshore Facilities*).

56.     Defendants' Magnolia Station is a "complex" facility engaged in transportation- and non-transportation related activities, within the meaning of 40 C.F.R. § 112.1.

57.     The area of Defendants' Magnolia Station that contains the ruptured strainer is a "non-transportation-related onshore or offshore facility engaged in … storing [or] transferring … oil and oil products, which due to its location, could reasonably be expected to discharge oil in quantities that may be harmful … into or upon the navigable waters of the United States or adjoining shorelines," within the meaning of 40 C.F.R. § 112.1.

58.     Defendants' Magnolia Station "has oil in … [an] aboveground container," within the meaning of 40 C.F.R. § 112.1.

59.     Defendants' Magnolia Station is an "onshore facility," within the meaning of 40 C.F.R. § 112.8.

60.     Defendants are each an owner or operator of a facility subject to 40 C.F.R. Part 112.

61.     Defendants are each an owner or operator of an onshore facility subject to 40 C.F.R. §§ 112.7 and 112.8.

62.     Owners and operators of onshore facilities subject to 40 C.F.R. §§ 112.7 and 112.8 must comply with the general requirements of 40 C.F.R. § 112.7, as well as the specific discharge prevention and containment measures of 40 C.F.R. § 112.8.

63.     Under 40 C.F.R. § 112.7, owners and operators of a facility subject to 40 C.F.R. Part 112 must prepare an SPCC Plan in accordance with good engineering practices.

64.     Under 40 C.F.R. § 112.7(b), where experience indicates a reasonable potential for equipment failure, owners and operators of a facility subject to 40 C.F.R. Part 112 must include in their SPCC Plan a prediction of the direction, rate of flow, and total quantity of oil which could be discharged from the facility as a result of each type of major equipment failure.

65.     Under 40 C.F.R. § 112.7(c), an owner or operator of a facility subject to 40 C.F.R. Part 112 must provide appropriate containment and/or diversionary structures or equipment to prevent a discharge of oil.

66.     Defendants failed to prepare its SPCC Plan in accordance with good engineering practices, in violation of 40 C.F.R. § 112.7.

67.     Defendants' experience indicates a reasonable potential for failure of underground pipeline equipment in the area where the ruptured strainer was located, but Defendants failed to include in their SPCC Plan a prediction of the direction, rate of flow, and total quantity of oil which could be discharged from the facility as a result of that type of major equipment failure, in violation of 40 C.F.R. § 112.7(b).

68.     Defendants failed to provide appropriate containment for oil discharged from the area surrounding the ruptured strainer at the Magnolia Station, in violation of 40 C.F.R. § 112.7(c).

69.     Defendants are "persons," within the meaning of Section 311(b)(7)(C) of the CWA, 33 U.S.C. § 1321(b)(7)(C).

70.     Under Section 311(b)(7)(C) of the CWA, 33 U.S.C. § 1321(b)(7)(C), Defendants are liable for civil penalties of up to $37,500 for each day of violation occurring after January 12, 2009, for failing to comply with a regulation issued under Section 311(j) of the CWA. *See* 40 C.F.R. § 19.4.

## THIRD CAUSE OF ACTION

### Injunctive Relief under CWA Section 309(b)
### 33 U.S.C. § 1319(b)

71.     Paragraphs 1 through 30 and Paragraphs 38 through 70 are realleged and incorporated herein.

72.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits "the discharge of any pollutant by any person" except in compliance with enumerated sections.  The discharge of a pollutant is defined to include the addition of any pollutant from a "point source" to waters of the United States.  33 U.S.C. § 1362(7), (12).   .

73.     The oil discharged by Defendants is a pollutant, within the meaning of Section 502(6) of the CWA, 33 U.S.C. § 1362(6), and the strainer at the Magnolia Station from which oil was discharged is a "point source," within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

74.     The discharge of oil described above violated Section 301(a) of the CWA,

33 U.S.C. § 1311(a).

75.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), is the enforcement provision for

Section 301(a) and authorizes civil actions for "appropriate relief, including a permanent or

temporary injunction."

76.     Defendants are liable for injunctive relief pursuant to Section 309(b) of the CWA.

## FOURTH CAUSE OF ACTION

### Violations of the Arkansas Hazardous Waste Management Act

77.     The preceding paragraphs are realleged and incorporated herein.

78.     Ark. Code Ann. §§ 8-7-201, *et seq*., otherwise known as the Arkansas Hazardous

Waste Management Act ("HWMA"), and APC&EC Regulation 23, issued under the authority of

the HWMA, set forth the State regulatory program governing the generation, storage,

transportation, treatment, and disposal of hazardous wastes.

79.     Under Ark. Code Ann. § 8-7-205(4), it is unlawful for any person to store, collect,

transport, treat, or dispose of any hazardous waste contrary to the rules, regulations, permits, or

orders issued under the HWMA or in such a manner or place as to create or is likely to create a

public nuisance or a public health hazard or to cause or is likely to cause water or air pollution,

within the meaning of the Arkansas Water and Air Pollution Control Act, Ark. Code Ann. §§ 8-

4-101, *et seq.*

80.     APC&EC Regulation 23, § 262.26(d) (effective date of September 25, 2015; cited

as § 262.24(d) at the time of release) states that "[g]enerators may not assign hazardous wastes to

unpermitted transporters …."

81.     APC&EC Regulation 23, § 262.26(e) (effective date of September 25, 2015; cited

as § 262.24(e) at time of release) states that "[a] generator may not ship a hazardous waste to a

TSDF unless the TSDF has a valid permit, or has interim status, or is specifically approved to receive such a waste…."

82.    The HWMA defines a "person" as any individual, corporation, company, firm, partnership, association, trust, joint-stock company, state agency, government instrumentality or agency, institution, county, city, town, or municipal authority or trust, venture, or any other legal entity, however organized.  Ark. Code Ann. § 8-7-203(10).

83.    "Generator" is defined by the APC&EC Regulation 23, § 260.10 as "any person, by site, whose act or process produces hazardous waste identified or listed in Section 261 [of APC&EC Regulation 23] or whose act first causes hazardous waste to become subject to regulation."

84.    "Transport," as defined by the HWMA, occurs upon the movement of wastes from the point of generation to any intermediate points and finally to the point of ultimate storage or disposal.  Ark. Code Ann. § 8-7-203(13).

85.    "Transporter" is defined by the APC&EC Regulation 23, § 260.10 as "a person engaged in the offsite transportation of hazardous waste by air, rail, highway, or water."

86.    "Manifest" is defined by the APC&EC Regulation 23, § 260.10 as "the shipping document EPA Form 8700-22 (including, if necessary, EPA Form 8700-22A), or the electronic manifest, originated and signed by the generator or offeror in accordance with the instructions in the appendix to Section 262 and the applicable requirements of Sections 262 through 265 of this Regulation."

87.    Under the HWMA, the term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any hazardous waste into or on any land or water in whatever manner so that such hazardous waste or any constituent thereof might or might not

enter the environment or be emitted into the air or discharged into any waters including groundwaters.  Ark. Code Ann. § 8-7-203(4).

88.     Under the HWMA, the term "hazardous waste" means any waste or combination of wastes of a solid, liquid, contained gaseous, or semisolid form, which, because of its quantity, concentration, or physical, chemical, or infectious characteristics, may in the judgment of ADEQ: (1) cause or significantly contribute to an increase in mortality or an increase in serious irreversible or incapacitating reversible illness, or (2) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise improperly managed.  Such wastes include, but are not limited to, those which are radioactive, toxic, corrosive, flammable, irritants, or strong sensitizers or those which generate pressure through decomposition, heat, or other means.  Ark. Code Ann. § 8-7-203(7).

89.     The term hazardous waste includes petroleum-contaminated soil if contaminated with benzene above the TCLP criteria found in APC&EC Regulation 23 § 261.24 and Table 1.

90.      APC&EC Regulation 23, §§ 262 and 263 set forth the requirements applicable to generators and transporters of hazardous wastes.

91.     Defendants are "persons" who have manifested, "transported," and "disposed" of "hazardous wastes" contrary to the rules, regulations, permits, or orders issued under the HWMA or in such a manner or place as to create or is likely to create a public nuisance or a public health hazard or to cause or is likely to cause waste or air pollution within the meaning of the Arkansas Water and Air Pollution Control Act.

92.     Under Ark. Code Ann. § 8-7-204(b)(4), any person who violates any provision of the Arkansas HWMA and APC&EC Regulation 23 may be assessed a civil penalty of up to $25,000.00 per day per violation.

## FIFTH CAUSE OF ACTION

### Violations of the Arkansas Water and Air Pollution Act – Water

93.     The preceding paragraphs are realleged and incorporated herein.

94.     Ark. Code Ann. §§ 8-4-101, *et seq.*, otherwise known as the Arkansas Water and Air Pollution Control Act, and APC&EC Regulation 2 create a comprehensive program for the protection of water quality.

95.     Ark. Code Ann. § 8-4-217(a)(1) makes it unlawful to cause pollution of any waters of the State.

96.     The term "pollution" is defined as the contamination or other alteration of the physical, chemical, or biological properties of any waters of the State, or such discharge of any liquid, gaseous, or solid substances in any waters of the State as will, or is likely to, render the waters harmful, detrimental, or injurious to public health, safety, or welfare; to domestic, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses; or to livestock, wild animals, birds, fish, or other aquatic life.  Ark. Code Ann. § 8-4-102(6).

97.     An unpermitted discharge occurred to waters of the State, in violation of APC&EC Regulation 2.409, which states "Discharges shall not be allowed into any waterbody which, after consideration of the zone of initial dilution, the mixing zone and critical flow conditions, will cause toxicity to human, animal, plant or aquatic biota or interfere with normal propagation, growth, and survival of aquatic biota."

98.     An unpermitted discharge occurred to waters of the State, in violation of APC&EC Regulation 2.410, which states "Oil, grease, or petrochemical substances shall not be present in receiving waters to the extent that they produce globules or other residue or any

visible, colored film on the surface or coat the banks and/or bottoms of the waterbody or adversely affect any of the associated biota."

99.     Defendants have caused "pollution" of the waters of the State in the manners outlined herein.

100.    Pursuant to Ark. Code Ann. § 8-4-103(b)(2), the State of Arkansas may "[a]ffirmatively order that remedial measures be taken as may be necessary or appropriate to implement or effectuate the purposes and intent of this chapter …."

101.    In accordance with Ark. Code Ann. § 8-4-103(b)(3), the State of Arkansas is entitled to "[r]ecover all costs, expenses, and damages to the department [ADEQ] and any other agency or division of the state in enforcing or effectuating the provisions of this chapter, including, but not limited to, natural resource damages …."

102.    Under Ark. Code Ann. § 8-4-103(b)(4), any person who violates any provision of the Arkansas Water and Air Pollution Control Act and APC&EC Regulation 2 may be assessed a civil penalty of up to $10,000 per day, per violation.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs the United States of America and the State of Arkansas request that this Court:

A.  Enter a judgment that Defendants are liable to the United States for civil penalties of:

1.  Up to $1,100 per barrel of oil released into the environment, pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A); or

2.  If the violation is the result of gross negligence or willful misconduct, no more than $4,300 per barrel of oil released into the environment, pursuant to Section 311(b)(7)(D) of the CWA, 33 U.S.C. § 1321(b)(7)(D); and

    3.  Up to $37,500 per day for each SPCC violation occurring after January 12, 2009, pursuant to Section 311(b)(7)(C) of the CWA, 33 U.S.C. § 1321(b)(7)(C);

B.  Enter a judgment that Defendants are liable to the United States for all appropriate injunctive relief, pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and award injunctive relief against each Defendant as appropriate;

C.  Find that Defendants are liable to the State of Arkansas for civil penalties pursuant to the Arkansas Hazardous Waste Management Act and assess civil penalties of up to $25,000 per day, per violation;

D.  Find that Defendants are liable to the State of Arkansas for civil penalties pursuant to the Arkansas Water and Air Pollution Control Act and assess civil penalties of up to $10,000 per day, per violation;

E.  Order Defendants to take all such actions as may be necessary to eliminate any present pollution within the meaning of the Arkansas Water and Air Pollution Control Act and to complete remediation to protect human health and the environment;

F.  Find that Defendants are liable to the State of Arkansas for all costs, expenses, and damages incurred by ADEQ in enforcing or effectuating the provisions of the Arkansas Water and Air Pollution Control Act or the Arkansas Hazardous Waste Management Act; and

G.  Grant the United States and the State such other relief as the Court deems appropriate.

Respectfully submitted,

JEFFREY H. WOOD
ACTING ASSISTANT ATTORNEY GENERAL
United States Department of Justice
Environment and Natural Resources Division

ANNA E. GRACE
MA Bar Number 686070
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC, 20044
Telephone: (202) 514-4091
Email: Anna.E.Grace@usdoj.gov


DUANE (DAK) KEES
UNITED STATES ATTORNEY

By: _____
Deborah Groom
Civil Chief/Assistant United States Attorney
Bar No. 80054
414 Parker Avenue
Fort Smith, Arkansas 72901
Telephone: 479-494-4074
Fax: 479-441-0569
Email: Debbie.Groom@usdoj.gov

OF COUNSEL:

Kelly Ann Kaczka Brantner, Attorney
Office of Civil Enforcement
Water Enforcement Division
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Mail Code 2243A, WJC South Room 3120A
Washington, DC, 20460
Telephone: 202-564-9933
Email: Brantner.Kelly@epa.gov

Amy Salinas, Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue
Mail Code: 6RC, Suite 1200
Dallas, TX  75202-2733
Telephone: 214-665-8063
Email: Salinas.Amy@epa.gov

ATTORNEYS FOR THE UNITED STATES

LESLIE RUTLEDGE
ATTORNEY GENERAL
Arkansas Attorney General's Office

By: _____

DARA ANDREW HALL
Bar Number:  96018
Assistant Attorney General
Arkansas Attorney General's Office
Environmental Division
Public Protection Department


ATTORNEYS FOR THE STATE

CERTIFICATE OF SERVICE

I, Deborah Groom, Civil Chief and Assistant U.S. Attorney for the Western District of Arkansas, do hereby certify that on July 13, 2018, I conventionally filed the foregoing with the Clerk of Court and did send a true and correct copy by First Class, Postage Pre-Paid, U.S. Mail to the following:

> Attorney LeAnn Johnson-Koch
> Counsel for Defendants
> 700 13th Street NW
> Suite 600
> Washington, D.C. 20005-3960

Deborah Groom