IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

UNITED STATES OF AMERICA
and STATE OF ARKANSAS     PLAINTIFFS

v.     Case No. 1:18-cv-1040

DELEK LOGISTICS OPERATING LLC
and SALA GATHERING SYSTEMS LLC     DEFENDANTS

## **ORDER**

Before the Court is Plaintiff United States of America's Motion to Enter Consent Decree. (ECF No. 28). The Court is informed that the motion is unopposed. The Court finds the matter ripe for consideration.

## I. BACKGROUND

On October 31, 2018, Plaintiffs[1] filed an amended complaint in this action, seeking civil penalties and injunctive relief pursuant to Sections 301, 309, and 311 of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq.; the Arkansas Water and Air Pollution Control Act; and the Arkansas Hazardous Waste Management Act. The alleged violations arise from an oil spill at Defendants' pump station and tank facility in Magnolia, Arkansas, resulting from a pipe rupture and subsequent equipment failure. Plaintiffs allege that Defendant Delek spilled harmful quantities of oil into navigable waters of the United States and harmed wildlife, habitat, and the environment. Plaintiffs also allege that the oil spill exceeded water pollution standards set by the State of Arkansas and that Delek generated, transported, and failed to properly dispose of hazardous waste.

---

[1] The United States acts on behalf of the United States Environmental Protection Agency. The State of Arkansas acts on behalf of the Arkansas Department of Environmental Quality, by authority of the Arkansas Attorney General.

On August 30, 2019, the United States filed a notice of consent decree, stating that all parties to this case have entered into a proposed consent decree. The United States also lodged the consent decree itself in the record. (ECF Nos. 25, 25-1). Although a detailed reproduction of the proposed consent decree is unnecessary, the Court will provide a brief overview of the consent decree's main provisions.

The proposed consent decree requires Defendants to pay to the United States a civil penalty of $1,705,460, plus interest accruing from January 25, 2019. Defendants must also pay to the State of Arkansas a civil penalty of $550,000. The consent decree also calls for Defendants to undertake extensive injunctive measures. Defendants must perform confirmatory sampling at specific sites. Defendants must then design and implement a monitoring or remedial plan for any sampled site that exhibits a possibly unacceptable human health or ecological risk. Defendants must provide annual spill-response training to all employees working at the Magnolia plant, in addition to providing supplemental training to designated first responders and conducting training and/or planning exercises with state and local emergency response agencies. Defendants must assemble and place spill-response caches of materials and equipment at their facilities. Defendants must also provide semi-annual reports to Plaintiffs, detailing all efforts taken in the previous semi-annual period relevant to the consent decree, along with a description of any non-compliance with the consent decree and an explanation of the likely cause and what remedial steps have or will be taken to remedy the issue. The consent decree also contemplates stipulated penalties for violations of the consent decree.

On September 6, 2019, the United States published notice of the proposed consent decree in the Federal Register for a period of thirty days for public comment, pursuant to 28 C.F.R. § 50.7. On September 16, 2019, Mahony Corporation, a non-party to this case that owns land

impacted by the Magnolia oil spill, filed a response to the parties' proposed consent decree. (ECF No. 26).

On October 30, 2019, the United States filed the instant unopposed motion, requesting that the Court approve the parties' proposed consent decree as fair, adequate, reasonable, and consistent with the CWA. The United States argues that Mahony's comment presents no reason to disapprove of the parties' consent decree. Consequently, the United States asks the Court to execute and enter the proposed decree as a final judgment in this case.

## II. DISCUSSION

"Before entering a consent decree, this Court must find that the settlement is procedurally fair, substantively fair, reasonable, and consistent with [the governing statute]." *United States v. Union Elec. Co.*, 934 F. Supp. 324, 327 (E.D. Mo. 1996) *aff'd*, 132 F.3d 422 (8th Cir. 1997). "Consent decrees should[] spring from—and serve to resolve—a dispute within the court's subject-matter jurisdiction; come within the general scope of the case from the pleadings; and further the objectives of the law on which the complaint was based." *EEOC v. Prod. Fabricators, Inc.*, 666 F.3d 1170, 1172 (8th Cir. 2012). The Court enjoys considerable discretion in deciding whether to approve the parties' proposed consent decree. *United States v. BP Amoco Oil PLC*, 277 F.3d 1012, 1019 (8th Cir. 2002).

Although the law strongly favors settlement, courts must not abdicate their duty to adjudicate controversies before them in accordance with the law merely because the parties have proposed a consent decree. *See Angela R. by Hesselbein v. Clinton*, 999 F.2d 320, 324 (8th Cir. 1993). Accordingly, a court may not merely "rubber stamp" a consent decree, but must instead "carefully consider[] the underlying facts and legal arguments." *BP Amoco Oil*, 277 F.3d at 1019. "Nevertheless, where the United States is a party to the consent decree, the court will give due deference to the Environmental Protection Agency's . . . inherent expertise in environmental

3

matters in determining whether to approve the consent decree." *United States v. City of Waterloo*, No. 15-cv-2087-LRR, 2016 WL 254725, at *3 (N.D. Iowa Jan. 20, 2016); *see also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("Th[e] policy [in favor of settlements] has particular force where, as here, a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement.").

The United States asks the Court to approve the proposed consent decree as fair, adequate, reasonable, and consistent with the goals of the CWA. The United States also argues that the comment received from Mahony Corporation during the public comment period does not provide adequate reason to deny the instant motion. The Court will address these arguments separately before answering the ultimate question of whether to approve the proposed consent decree.

**A. Consistency with the Goals of the CWA**

The purpose of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 52 (1987). The United States points out that, under the consent decree, Defendants will be required to pay civil penalties totaling $2,255,460. The United States argues that these civil penalties will serve as a punishment and will help deter Defendants and others from future violations of the CWA. The United States also asserts that the consent decree requires Defendants to: (1) take steps to hasten environmental protections at its facility; (2) monitor downstream water quality in the impacted area; and (3) improve the safety of its pipeline operation and response efforts, including spill-response training and assembly of spill-response equipment caches. Thus, the United States argues that the proposed consent decree is consistent with the CWA's goals.

The Court agrees. The proposed consent decree requires Defendants to pay civil penalties and undertake extensive injunctive measures to address the alleged violations by improving its infrastructure with an eye toward avoiding future violations. The consent decree provides concrete

action items and creates systems to ensure timely compliance with this goal. Thus, the Court finds that the proposed consent decree is consistent with the CWA's goal of restoring and maintaining the chemical, physical, and biological integrity of the Nation's waters while also recognizing the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution. *See* 33 U.S.C. § 1251.

### B. Fairness, Reasonableness, and Adequacy

Courts considering whether a consent decree is fair consider both procedural fairness and substantive fairness. *Ne. Iowa Citizens for Clean Water v. AgriProcessors, Inc.*, 469 F. Supp. 2d 666, 673 (N.D. Iowa 2006). Procedural fairness turns on whether the parties "were . . . negotiating in good faith and at arm's length." *BP Amoco Oil*, 277 F.3d at 1020. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gage its candor, openness, and bargaining balance." *Union Elec. Co.*, 934 F. Supp. at 327 (citing *Cannons*, 899 F.2d at 86). "Substantive fairness introduces into the equation concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *BP Amoco Oil*, 277 F.3d at 1020.

The United States argues that the proposed consent decree is fair because it is the result of good faith, arms-length negotiation between the parties. The United States asserts that each side carefully assessed the relative merits of the other's positions, accounting for the costs and risks associated with litigating a case like this one.

The Court agrees. The parties negotiated in good faith and at arms' length, spending time, effort, and expense negotiating a settlement. The United States represents that the parties were each represented by experienced counsel who worked closely with the EPA and Delek's respective technical staffs to investigate and pursue the case. Thus, the Court is satisfied that the proposed consent decree is procedurally fair.

"When determining whether a consent decree is reasonable, the court must consider the technical adequacy of the remedies, the adequacy of the settling defendants' obligations to cover the response costs and the savings represented by settlement over litigation." *United States v. Mallinckrodt, Inc.*, 4:02-cv-1488, 2007 WL 1231665 (E.D. Mo. 2007) (citing *Cannons*, 899 F.2d at 90). "In doing so, the court does not examine 'whether the settlement is one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute.'" *City of Waterloo*, 2016 WL 254725, at *4 (quoting *Cannons*, 899 F.2d at 84). "The court need only be satisfied that the decree represents a 'reasonable factual and legal determination.'" *Id.* (quoting *United States v. State of Oregon*, 913 F.2d 576, 581 (9th Cir. 1990)).

The United States contends that the proposed consent decree—which would secure civil penalties paid to both the United States and the State of Arkansas, impose injunctive relief designed to prevent future spills and improve Defendants' spill-response efforts, and require monitoring and testing with appropriate remedial work—achieves a laudable outcome without the need for additional expenditure of the parties' and the Court's time and resources. Thus, the United States argues that the proposed consent decree is reasonable and adequate.

The Court agrees. The remedial measures provided for in the consent decree are reasonably gauged to remedy Defendants' alleged violations of the CWA and Arkansas law. The proposed consent decree requires Defendants to address the alleged violations by improving its infrastructure with an eye toward avoiding future violations. The consent decree also requires that Defendants pay substantial civil penalties that will serve to deter future violations by Defendants and others. The substantial public safety risk that continued violations pose, along with the dearth of alternative possibilities to remedy the alleged violations, suggest to the Court that the proposed consent decree is substantively fair, reasonable, and adequate.

In sum, the Court finds that the proposed consent decree is fair, reasonable, and adequate. The Court must now address whether Mahony's public comment warrants the denial of the instant motion.

**C. Public Comment**

Regulations require the United States to publish the proposed consent decree in the Federal Register for a public comment period. *See* 28 C.F.R. § 50.7. "Accordingly, courts must take under serious consideration any comments received during this period." *City of Waterloo*, 2016 WL 254725, at *6; *see also United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1991) (considering whether there was a "manifested willingness of [the] EPA to thoroughly consider all oral and written comments made with regard to the proposed decree"); *United States v. Telluride Co.*, 849 F. Supp. 1400, 1404 (D. Colo. 1994) (considering the number of public comment letters received in opposition to the consent decree at issue, and noting that the court "cannot overemphasize the role that the public plays in th[e] process").

The sole comment received during the public comment period in this case was from the Mahony Corporation, a landowner whose property was impacted by the Magnolia oil spill. The commenter states that it was not informed of the March 2013 oil spill until June 2013[2] and that the individuals who cleaned up the oil spill trespassed on Mahony's land in doing so. The commenter claims that the terms of the proposed consent decree will require further trespass on Mahony's land to collect soil and water samples, with no advance notice provided. The commenter concludes by asking the Court to require that notice be given and permission sought any time the parties need to access Mahony's land to comply with the proposed consent decree. The commenter also asks

---

[2] Furthermore, the comment describes Mahony's admittedly unsuccessful efforts to propose and enact state legislation requiring that notice of oil spills be given to impacted Arkansas landowners.

the Court to require Defendants to give Mahony and all other Arkansas landowners notice of any future spills impacting their property.[3]

The United States argues that this comment does not warrant disapproval of the proposed consent decree for several reasons. First, the United States argues that the proposed consent decree does not permit trespass on private property to comply with the consent decree but, rather, requires Defendants to obtain an appropriate federal, state, or local permit or approval in all situations when necessary to comply with the consent decree. The United States assert that if Defendants require access to the Mahony property to effectuate the terms of the consent decree, they would be required to seek a permit or approval, which would necessarily provide notice to Mahony of the need to access its property. The United States also argues that Mahony's request that it and all other Arkansas landowners be notified by Defendants of any future oil spills seeks to impose a private obligation for a private benefit and, as such, is beyond the scope of this action, which seeks to enforce the CWA and Arkansas law.

Upon careful consideration, the Court agrees with the United States that the comment does not draw into question the fairness, reasonableness or adequacy of the proposed consent decree. The comment provides little by way of specific grievances with the consent decree, but rather sets forth Mahony's displeasure that federal or state officials did not provide it notice of the Magnolia oil spill or seek its permission before entering the Mahony property during clean-up efforts. As written, the proposed consent decree addresses the portion of Mahony's comment seeking advance notice of any future entry on its land, as Mahony would necessarily be notified of such need when the parties seek an applicable permit or approval. Mahony's request that the parties be required to notify it and all other Arkansas landowners of any future oil spills is unnecessary because the

---

[3] It is unclear whether Mahony asks for the proposed consent decree to be modified to include these requests or if it instead asks for a separate, independent order on the requests. Plaintiffs appear to assume the former and in the absence of a clear explanation from Mahony, the Court will do the same.

National Response Center, in conjunction with the United States Coast Guard, maintains a publicly available database of all releases and spills in the United States and its territories, and Mahony may access that database at any time. For these reasons, the Court finds that Mahony's comment does not present cause to disapprove of the proposed consent decree.

**D. Conclusion**

As discussed above, the Court finds that the proposed consent decree is fair, reasonable and adequate. It also finds that the consent decree closely comports with the goals of the CWA. The Court finds that the sole comment received during the public comment period does not draw the fairness, reasonableness, or adequacy of the proposed consent decree into question. Accordingly, the United States' motion should be granted.

### III. CONCLUSION

For the above-stated reasons, the Court finds that the United States' motion (ECF No. 28) should be and hereby is **GRANTED**. The Court will separately sign and file the consent decree. The Clerk of Court is **directed** to close this case. The Court will retain jurisdiction over this case for the sole purpose of adjudicating any disputes arising under the consent decree.

**IT IS SO ORDERED**, this 8th day of November, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge