IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA and
STATE OF ARKANSAS

Plaintiffs,

v.

Case No. 1:18-cv-01040

DELEK LOGISTICS OPERATING, LLC, and
SALA GATHERING SYSTEMS, LLC,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**CONSENT DECREE**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | JURISDICTION AND VENUE | 3 |
| II. | APPLICABILITY | 4 |
| III. | DEFINITIONS | 5 |
| IV. | CIVIL PENALTY | 7 |
| V. | INJUNCTIVE RELIEF | 8 |
| VI. | REPORTING REQUIREMENTS | 12 |
| VII. | STIPULATED PENALTIES | 14 |
| VIII. | FORCE MAJEURE | 18 |
| IX. | DISPUTE RESOLUTION | 20 |
| X. | INFORMATION COLLECTION AND RETENTION | 23 |
| XI. | EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS | 25 |
| XII. | COSTS | 27 |
| XIII. | NOTICES | 27 |
| XIV. | EFFECTIVE DATE | 30 |
| XV. | RETENTION OF JURISDICTION | 30 |
| XVI. | MODIFICATION | 30 |
| XVII. | TERMINATION | 31 |
| XVIII. | PUBLIC PARTICIPATION | 31 |
| XIX. | SIGNATORIES/SERVICE | 32 |
| XX. | INTEGRATION | 32 |
| XXI. | FINAL JUDGMENT | 33 |
| XXII. | 28 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION | 33 |
| XXIII. | APPENDICES | 41 |

WHEREAS, Plaintiffs United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of Arkansas (the "State" or "Arkansas"), on behalf of the Arkansas Department of Environmental Quality ("ADEQ"), have filed a complaint and amended complaint in this action alleging that Delek Logistics Operating, LLC ("Delek Logistics"), and SALA Gathering Systems, LLC ("SALA") ("Defendants"), violated Sections 301(a) and 311(b)(3) of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. §§ 1311(a) and 1321(b)(3), and violated certain provisions of the Spill Prevention Control and Countermeasure ("SPCC") regulations, 40 C.F.R. Part 112. The Complaint also alleges that Defendants violated the Arkansas Hazardous Waste Management Act ("AHWMA"), Ark. Code Ann. §§ 8-7-201 – 227, and the Arkansas Water and Air Pollution Control Act, Ark. Code Ann. §§ 8-4-101 – 409, and APC&EC Regulations 2.409 and 2.410;

WHEREAS, the Complaint alleges that beginning on March 8, 2013, Defendants discharged crude oil into waters of the United States and waters of the State from Defendants' oil pump station and storage tank facility located in Magnolia, Arkansas (the "Magnolia Facility"). The United States asserts in the Complaint three claims for relief related to the discharge of oil and the failure to design and maintain adequate containment and spill prevention at the Magnolia Facility. Arkansas, joining the Complaint as a co-plaintiff, asserts two claims for relief related to the discharge of oil and the alleged improper manifesting, transportation, and disposal of hazardous wastes;

WHEREAS, Defendants assert that subsequent to the oil spill in 2013, they, or their affiliated entities, undertook the following actions at the Magnolia Facility: (1) installed or enhanced berms and graded soil to ensure oil spills occurring outside of tank containment would flow into an existing containment pond ("East Pond"); (2) increased secondary containment

1

capacity of East Pond to approximately 4,800 barrels; (3) removed all in ground strainers and replaced them with above ground strainers; (4) installed supervisory control and data acquisition ("SCADA") monitored leak detection meters on pipelines; (5) installed SCADA monitored gages and high level alarms on all production tanks; (6) installed 24-hour hydrocarbon monitors and/or infrared video cameras for leak detection; (7) installed pressure transmitters to the suction side of all product discharge pumps; (8) installed SCADA controlled, electronically operated isolation valves to the discharge side of all product discharge pumps; (9) installed alarms on seal leak detectors at pumps and on pump sumps; (10) converted an existing warehouse in the vicinity of Magnolia Facility to store emergency response equipment for Delek's and its affiliated entities' operations in southern Arkansas; (11) tested station piping to three times the normal operating pressure and is bringing underground lines aboveground for ease of inspection going forward; (12) tested or inspected all check valves on pump discharges and installed motor operated valves as a back-up to the check valves; and (13) is implementing a "dead leg" removal program;

WHEREAS, Delek Logistics Partners, LP ("Delek Partners"), the parent corporation of Delek Logistics and SALA and the owner/operator identified in the SPCC and FRP plans for the Magnolia Facility, joins as a party to the Consent Decree for purposes of fulfilling the Consent Decree obligations with respect to SPCC and FRP regulations;

WHEREAS, EPA conducted an inspection of the Magnolia Facility and reviewed the Magnolia Facility's SPCC and FRP plans on October 15 and 19, 2018, respectively. On November 9, 2018, and March 8, 2019, EPA notified Defendants of alleged SPCC and FRP violations at the Magnolia Facility that are in addition to the SPCC violations alleged in the Complaint and further described in Appendix A to this Consent Decree ("Magnolia Facility

2



Additional Alleged SPCC and FRP Violations"). Defendants and Delek Partners (hereinafter "Delek") do not admit or deny the additional alleged SPCC and FRP violations described in Appendix A (the "Additional Alleged Violations"), but agreed to and have taken steps to address them. A description of the work undertaken by Delek to address the Additional Alleged Violations is set forth in Appendix B to this Consent Decree ("Description of Work Completed by Delek to Address Additional Alleged SPCC and FRP Violations"). Delek Partners has submitted to EPA a compliance certification, attached as Appendix C to this Consent Decree, certifying under penalty of law that the work described in Appendix B has been completed;

WHEREAS, Defendants filed an answer to the Complaint denying any liability to the United States or Arkansas arising out of the claims alleged in the Complaint and Delek Partners is not a party to the Complaint and does not admit or deny the allegations in the Complaint;

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section 1 and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.     JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 309(b) and 311(b)(7)(E) of the Act, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E), and over the Parties. This Court has jurisdiction over Delek Partners and Delek Partners' obligations in this Consent Decree, pursuant to the All Writs Act, 28 U.S.C. § 1651, and Fed. R. Civ. Proc. 19(a), because its cooperation is necessary for

3



implementation of this Consent Decree. This Court has supplemental jurisdiction over the State

law claims asserted by the State pursuant to 28 U.S.C. § 1367. Venue lies in this district

pursuant to Sections 309(b) and 311(b)(7)(E) of the Act, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E),

and 28 U.S.C. §§ 1391(b) and 1395(a), because the violations alleged in the Complaint are

alleged to have occurred in, and Defendants conduct business in, this judicial district. For

purposes of this Decree, or any action to enforce this Decree, Delek consents to this Court's

jurisdiction over this Decree and any such action to enforce this Decree and over Delek, and

Delek consents to venue in this judicial district.

2.      For purposes of this Consent Decree, Delek agrees that the Complaint states

claims upon which relief may be granted pursuant to Sections 301(a), 309(b), and 311(b) of the

Act, and 40 C.F.R. Part 112.

## II.      APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United

States and Arkansas, and upon Delek, and any successors, assigns, or other entities or persons

otherwise bound by law.

4.      No transfer of ownership or operation of the Facilities, whether in compliance

with the procedures of this Paragraph or otherwise, shall relieve Delek of its obligation to ensure

that the terms of the Decree are implemented. At least 30 Days prior to such transfer, Delek

shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously

provide written notice of the prospective transfer, together with a copy of the proposed written

agreement, to EPA Region 6, the United States Attorney for the Western District of Arkansas,

the United States Department of Justice, and the State of Arkansas, in accordance with Section

4



XIII (Notices). Any attempt to transfer ownership or operation of the Magnolia Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      Delek shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Delek may fulfill the requirement to provide such persons with a copy of the Decree by including the Consent Decree on a website or database to which such persons have access, and by providing such persons with notice of the location of the Decree and a url or other electronic link that displays an electronic copy of the Decree. Delek shall condition any contract to perform work required under this Consent Decree upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Delek shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

III.     DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree and Appendices, the following definitions shall apply:

"ADEQ" shall mean the Arkansas Department of Environmental Quality and any of its successor departments or agencies;

"Arkansas" shall mean the State of Arkansas;



"Complaint" shall mean the complaint and amended complaint filed by the United States and Arkansas in this action;

"Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIII (Appendices));

"Date of Lodging" shall mean the date when this Consent Decree is filed with the Court;

"Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the next business day;

"Defendants" shall mean Delek Logistics Operating, LLC, and SALA Gathering Systems, LLC;

"Delek Partners" shall mean Defendants' parent corporation, Delek Logistics Partners, LP.

"Delek" shall mean Delek Logistics Operating, LLC, SALA Gathering Systems, LLC, and Delek Logistics Partners, LP;

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" shall have the definition provided in Section XIV;

"El Dorado Facility" shall mean the office and warehouse located at 1001 School Street, in El Dorado, Arkansas;

"FRP" shall mean the Facility Response Plan as defined in 40 C.F.R. Part 112;

"Magnolia Facility" shall mean the oil pump station and storage tank facility located at 800 Columbia Road 25, near Magnolia, Arkansas;

"Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

6

"Parties" shall mean the United States, Arkansas, and Delek;

"Section" shall mean a portion of this Decree identified by a roman numeral;

"State" or "Arkansas" shall mean the State of Arkansas;

"United States" shall mean the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTY

8. Within 30 Days after the Effective Date, Defendants shall pay to the United States the sum of $1,705,460.00 as a civil penalty, together with interest accruing from January 25, 2019, at the rate specified in 28 U.S.C. § 1961 on the Date of Lodging.

9. Defendants shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Western District of Arkansas after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree. When making the payment, Defendants shall specify that the payment is made for CWA civil penalties to be deposited into the Oil Spill Liability Trust Fund pursuant to 33 U.S.C. § 1321(s) and 26 U.S.C. § 9509(b)(8). The FLU will provide the payment instructions to:

Misty Foy, Esquire
Senior Counsel
Delek Logistics Operating, LLC
(615) 435-1431
misty.foy@delekus.com and
legalnotices@delekus.com

on behalf of Defendants. Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change to the United States and EPA in accordance with Section XIII (Notices).

7



At the time of payment, Defendants shall send notice that payment has been made: (1) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (2) to the United States via email or regular mail in accordance with Section XIII; and (3) to EPA in accordance with Section XIII. Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States and State of Arkansas v. Delek Logistics Operating, LLC, and SALA Gathering Systems, LLC,* and shall reference the civil action number, the CDCS Number, and DOJ case number 90-5-1-1-11308.

10.     Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal or State income tax.

11.     No later than 30 Days after the Effective Date, Defendants shall pay $550,000.00 as civil penalties to Arkansas for deposit into the Hazardous Substance Remedial Action Trust Fund, in accordance with Ark. Code Ann. § 8-7-509(c)(2).

12.     Payment shall be made by check or EFT in accordance with instructions to be provided to Defendants. If by check, the check shall be made payable to the Arkansas Department of Environmental Quality, referencing Action Number 7322 and mailed to:

Attn: J. Michael Bynum
Fiscal Division, ADEQ
5301 Northshore Drive
North Little Rock, ARK 72118-5317
BynumJ@adeq.state.ar.us

## V.     INJUNCTIVE RELIEF

13.     The compliance requirements set forth in Paragraphs 14 to 18 below, and as further set forth in Appendix D to this Consent Decree, shall apply to the Magnolia Facility, and, where specified, to the El Dorado Facility.

8

14.     Delek shall not use Tank 364 inconsistent with its status as permanently closed, as defined by the regulation at 40 C.F.R. § 112.2, unless, prior to such use, Delek provides adequate secondary containment for Tank 364.

15.     Confirmatory Sampling. Within 180 days of the Date of Entry of the Consent Decree, Defendants shall conduct confirmatory sampling on the unnamed creek and Little Cornie Bayou, from the point of discharge to the location of the third (furthest downstream) weir installed during the response activities, according to the requirements below.

      a.     Defendants shall collect one sample each of surface water (if water is present in the creek), soil, and sediment at quarter mile intervals.

      b.     The soil samples shall be collected along the creek bank and the sediment samples shall be collected along the creek bed, at depths up to 48 inches using a hand auger.

      c.     Defendants shall have the samples analyzed for oil and grease and compare those results against Arkansas Water Quality Standards, APCE&EC Reg. 2.510 for oil and grease (15 mg/l).

      d.     Defendants shall have the soil and sediment samples analyzed for benzene, toluene, ethylbenzene, and xylene, and compare those results against the following:

|  | Industrial (ppm) |
|---|---|
| Benzene | 5.1 |
| Toluene | 47,000 |
| Ethyl Benzene | 25 |
| Xylene | 2500 |

9



e.      Defendants shall submit the sample results to ADEQ within 30 days of receipt of the lab report. If the sample results indicate no exceedances for benzene, toluene, ethylbenzene, or xylene, and oil and grease as indicated in subparagraph 15.c and d above, Defendants will have no further obligation to perform sampling or remediation related to the release under this Consent Decree.

f.      If the sample results indicate an exceedance for benzene, toluene, ethylbenzene, or xylene or for oil and grease as indicated in subparagraph 15.c and d above attributable to the release, Defendants shall conduct a screening level risk assessment. The screening level risk assessment shall be submitted to ADEQ within 90 days of the submission of the sample results.

g.      If the screening level risk assessment indicates that there is a potentially unacceptable human health or ecological risk, Defendants shall submit a site specific risk assessment and, if justified by the site specific risk assessment, a plan for monitoring or remedial action within 90 days after the submission of the screening level risk assessment. Any plan for monitoring or remediation shall take into consideration the level of potential risk posed by remaining residual compounds, natural attenuation and future biodegradation of organic compounds, and potential ecological impacts caused by remediation.

h.      Defendants shall begin implementation of the site specific monitoring/

10



remediation plan within 90 days of ADEQ approval.

      i.     If the screening level risk assessment indicates that there is no potentially unacceptable human health or ecological risk, Defendants shall have no further obligation to conduct sampling or perform remedial action related to the release under this Consent Decree.

16.    Spill Response Training. Defendants shall provide spill response training annually to all employees that work at the Magnolia Station. Within one year of the entry of this Consent Decree, Defendants shall provide supplemental training to designated first responders. This supplemental training shall be in addition to other regularly scheduled training under existing requirements or company protocols and shall be conducted for at least three (3) years. The supplemental training shall include participation in hands-on spill response field activities and strategies. Additionally, within one year of the entry of the Consent Decree and every other year after, Defendants shall conduct training and/or planning exercises with state and local emergency response agencies. Defendants shall submit to EPA and ADEQ by July 31 of each year a summary letter report documenting the spill response training and the supplemental spill response training described above for the year prior. At a minimum, the report must include the names of attendees, the dates and locations of the training, and a summary of the training conducted.

17.    Spill Response Materials Caches. Within 180 days after the Date of Entry of this Consent Decree, Defendants shall assemble and place caches of spill response materials and equipment at the Magnolia and El Dorado Facilities, in spill response trailers at each facility. The equipment and supplies in the caches shall be sufficient for emergency response actions at those facilities and shall include, but not be limited to, the quantities and types of equipment

11



listed in Appendix D to this Consent Decree. Defendants annually shall check the inventory of each cache and confirm each cache is in place and complete. For the three years after the entry of this Consent Decree, Defendants shall submit to EPA and ADEQ on July 31 a summary letter report documenting the status of each cache.

18.     Where any compliance obligation under this Section requires Delek to obtain a federal, state, or local permit or approval, Delek shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Delek may seek relief under the provisions of Section VIII (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Delek has submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

## VI.     REPORTING REQUIREMENTS

19.     In addition to any other reporting requirements under this Decree, on January 31 (for the reporting period July 1 - December 31) and on July 31 (for the reporting period (January 1-June 30) of each calendar year, starting with the earliest of these dates following the Effective Date of this Consent Decree, Delek shall submit to the United States and Arkansas a semi-annual report (paper or electronic copy) containing the following information:

> a.     A description of activities occurring the previous semi-annual period relevant to this Consent Decree that includes, but is not limited to, the status of implementation of the Consent Decree requirements; and
>
> b.     A description of any non-compliance with the requirements of this Consent Decree, and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such

12



violation.

20.     If Delek violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Delek shall notify the United States and Arkansas of such violation and its likely duration, in writing, by facsimile or email, within ten business days of the Day Delek first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Delek shall so state in the report. Delek shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Delek becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Delek of its obligation to provide the notice required by Section VIII (Force Majeure).

21.     Whenever any violation of this Consent Decree or any other event affecting Delek's performance under this Decree, or the performance of the Magnolia Facility, may pose an immediate threat to the public health or welfare or the environment, Delek shall notify EPA and Arkansas orally and by electronic transmission as soon as possible, but no later than 24 hours after Delek first knew of the violation or event. This notification requirement is in addition to the requirements set forth in the preceding Paragraph, and any other reporting obligations under law.

22.     All submissions required under this Decree are Reports subject to the requirements of Paragraphs 23 through 27, and the stipulated penalty provisions under Paragraph 31.

13



23. All Reports shall be submitted to the persons designated in Section XIII

(Notices).

24. Each Report submitted under this Section shall be signed by an officer or other

authorized representative of the submitting party and include the following certification:

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

25. This certification requirement does not apply to emergency or similar

notifications where compliance would be impractical.

26. The reporting requirements of this Consent Decree do not relieve Defendants or

Delek Partners of any reporting obligations required by the Act or implementing regulations, or

by any other federal, state, or local law, regulation, permit, or other requirement.

27. Any information provided pursuant to this Consent Decree may be used by the

United States and the State in any proceeding to enforce the provisions of this Consent Decree

and as otherwise permitted by law.

VII.   STIPULATED PENALTIES

28. Defendants and Delek Partners shall be liable for stipulated penalties to the

United States and Arkansas for violations of this Consent Decree as specified in Paragraphs 29-

31 below, unless excused under Section VIII (Force Majeure). A violation includes failing to

perform any obligation required by the terms of this Decree according to all applicable

14



requirements of this Decree and within the specified time schedules established by or approved under this Decree.

29. <u>Late Payment of Civil Penalty</u>. If Defendants fail to pay a civil penalty required to be paid under Section IV (Civil Penalty) when due, Defendants shall pay a stipulated penalty of $2,500 per Day for each Day that each payment is late. For purposes of this Paragraph, if Defendants fail to pay the civil penalty owed to the United States, Defendants shall pay such stipulated penalty to the United States; if Defendants fail to pay the civil penalty owed to Arkansas, Defendants shall pay such stipulated penalty to Arkansas.

30. <u>Compliance Milestones</u>. The following stipulated penalties shall accrue per violation per Day for each violation described in this Paragraph 30:

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $500 | 1st through 30th day |
| $1,000 | 31st through 60th day |
| $3,000 | 60th day and beyond |

    a.   Any transfer of the Magnolia Facility not in compliance with Paragraph 4 of this Consent Decree;

    b.   Use of Tank 364 inconsistent with its status as permanently closed, as defined by the regulation at 40 C.F.R. § 112.2, unless, prior to such use, Delek provides adequate secondary containment for Tank 364;

    c.   Failure to conduct confirmatory testing and submit test results to ADEQ in accordance with Paragraph 15;

    d.   Failure to complete the Spill Response Training in accordance with Paragraph 16; and

    e.   Failure to complete the Spill Response Caches in accordance with

15



Paragraph 17.

31. <u>Reporting Requirements</u>. The following stipulated penalties shall accrue per violation per Day for each violation described in this Paragraph 31:

| Penalty Per Violation Per day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $2,000 | 31st day and beyond |

a. Failure to submit any Report by the applicable deadline;

b. Failure to submit the summary letter reports required under Paragraphs 16 and 17 by the applicable deadline;

c. Failure to timely submit a certification with any Report;

d. Submission with any Report information that is not true, accurate, or complete.

32. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

33. Delek shall pay stipulated penalties to the United States and Arkansas within 30 Days of a written demand by either Plaintiff. Plaintiffs will confer with one another before issuing a stipulated penalty demand. Delek shall pay eighty percent of the total stipulated penalty amount to the United States and twenty percent to Arkansas, except for any stipulated penalties due under Subparagraphs 30.c - 30.e and 31.b, which Delek shall pay to the State. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

16



34. Either Plaintiff may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

35. Stipulated penalties shall continue to accrue for ongoing violations of the Consent Decree as provided in Paragraph 32, during any Dispute Resolution, pursuant to Section IX (Dispute Resolution), but stipulated penalties need not be paid until the following:

      a. If the dispute is resolved by agreement of the Parties or by a decision of EPA or Arkansas, as applicable, that is not appealed to the Court, Delek shall pay accrued penalties determined to be owing, together with interest as determined by Paragraph 37, to the United States or Arkansas within 30 Days of the effective date of the agreement or the receipt of EPA's or Arkansas' decision or order.

      b. If the dispute is appealed to the Court and the United States or Arkansas prevails in whole or in part, Delek shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

      c. If any Party appeals the District Court's decision, Delek shall pay all accrued penalties determined to be owing, together with interest as determined by Paragraph 37, within 15 Days of receiving the final appellate court decision.

36. Delek shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the

17

penalties are being paid. Delek shall pay stipulated penalties owing to Arkansas in the manner set forth by Paragraph 12, except the Delek shall state for which violation(s) the penalties are being paid.

37.     If Delek fails to pay stipulated penalties according to the terms of this Consent Decree, Delek shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or Arkansas from seeking any remedy otherwise provided by law for Delek's failure to pay any stipulated penalties.

38.     The payment of penalties and interest, if any, shall not alter in any way Delek's obligation to complete the performance of the requirements of this Consent Decree.

39.     Non-Exclusivity of Remedy. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Delek's violation of this Decree or applicable law, including but not limited to an action against Delek for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## VIII.   FORCE MAJEURE

40.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Delek, of any entity controlled by Delek, or of Delek's contractors that delays or prevents the performance of any obligation under this Consent Decree despite Delek's best efforts to fulfill the obligation. The requirement that Delek exercise "best



efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Delek's financial inability to perform any obligation under this Consent Decree.

41.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Delek shall provide notice orally and by electronic or facsimile transmission to EPA and Arkansas, within 72 hours of when Delek first knew that the event might cause a delay. Within seven days thereafter, Delek shall provide in writing to EPA and Arkansas an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Delek's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Delek, such event may cause or contribute to an endangerment to public health, welfare, or the environment. Delek shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Delek from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Delek shall be deemed to know of any circumstance of which Delek, any entity controlled by Delek, or Delek's contractors knew or should have known.

42.     If EPA, after a reasonable opportunity for review and comment by Arkansas, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for

19



performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by Arkansas, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Delek in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

43.     If EPA, after a reasonable opportunity for review and comment by Arkansas, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Delek in writing of its decision.

44.     If Delek elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Delek shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Delek complied with the requirements of Paragraphs 40 and 41. If Delek carries this burden, the delay at issue shall be deemed not to be a violation by Delek of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.     DISPUTE RESOLUTION

45.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Delek's failure to seek resolution of a dispute

under this Section shall preclude Delek from raising any such issue as a defense to an action by the United States to enforce any obligation of Delek arising under this Decree.

46. <u>Informal Dispute Resolution</u>. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Delek sends the United States and Arkansas a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within twenty (20) Days after the conclusion of the informal negotiation period, Delek invokes formal dispute resolution procedures as set forth below.

47. <u>Formal Dispute Resolution</u>. Delek shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and Arkansas a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Delek's position and any supporting documentation relied upon by Delek.

48. The United States, after consulting with Arkansas, shall serve its Statement of Position within 45 Days of receipt of Delek's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Delek, unless Delek files a motion for judicial review of the dispute in accordance with the following Paragraph.



49.     Delek may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within ten Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Delek's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

50.     The United States shall respond to Delek's motion within the time period allowed by the Local Rules of this Court. Delek may file a reply memorandum, to the extent permitted by the Court.

51.     Standard of Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 47, Delek shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

52.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Delek under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 35. If Delek does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).



## X.    INFORMATION COLLECTION AND RETENTION

53.    The United States, Arkansas, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Magnolia and El Dorado facilities, at all reasonable times, upon presentation of credentials, to:

- a.    Monitor the progress of activities required under this Consent Decree;

- b.    Verify any data or information submitted to the United States or Arkansas in accordance with the terms of this Consent Decree;

- c.    Obtain samples and, upon request, splits of any samples taken by Delek or their representatives, contractors, or consultants;

- d.    Obtain documentary evidence, including photographs and similar data; and

- e.    Assess Delek's compliance with this Consent Decree.

54.    Upon request, Delek shall provide EPA and Arkansas, or their authorized representatives, splits of any samples taken by Delek pursuant to this Consent Decree. Upon request, EPA and Arkansas shall provide Delek splits of any samples taken by EPA or Arkansas.

55.    Until five years after the termination of this Consent Decree, Delek shall retain, and shall instruct their contractors and agents to retain, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that relate in any manner to Delek's performance of their obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United



States or Arkansas, Delek shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

56.     At the conclusion of the information-retention period provided in the preceding Paragraph, Delek shall notify the United States and Arkansas at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or Arkansas, Delek shall deliver any such documents, records, or other information to EPA or Arkansas. If the United States or Arkansas do not request that the records be maintained, Delek shall have no obligation under the Consent Decree to retain the records.

57.     Delek may, when fulfilling the requirements of Paragraph 55 and 56, assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Delek asserts such a privilege, they shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Delek. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

58.     Delek may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Delek seeks to protect as CBI, Delek shall follow the procedures set forth in 40 C.F.R. Part 2.



59.     This Consent Decree in no way limits or affects any right of entry and inspection,

or any right to obtain information, held by the United States or Arkansas pursuant to applicable

federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of

Delek to maintain documents, records, or other information imposed by applicable federal or

state laws, regulations, or permits.

XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

60.     This Consent Decree resolves the civil claims of the United States and Arkansas

against Delek and the Delek affiliates, Lion Oil Company, Lion Oil Trading & Transportation,

LLC, Delek Crude Logistics, LLC, and El Dorado Pipeline Company, LLC (the "Delek

Affiliates"), for, through the Date of Lodging: (1) the violations alleged in the Complaint filed in

this action; and (2) the Additional Alleged Violations of SPCC and FRP regulations at the

Magnolia facility, as described in Appendix A.

61.     The United States and Arkansas reserve all legal and equitable remedies available

to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to

limit the rights of the United States or Arkansas to obtain penalties or injunctive relief or to

obtain information under the Act or implementing regulations, or under other federal or state

laws, regulations, or permit conditions, except as expressly stated in Paragraph 60. The United

States and Arkansas further reserve all legal and equitable remedies to address any imminent and

substantial endangerment to the public health or welfare or the environment arising at, or posed

by, the Magnolia and El Dorado facilities, whether related to the violations addressed in this

Consent Decree or otherwise.

62.     In any subsequent administrative or judicial proceeding initiated by the United

States or Arkansas for injunctive relief, civil penalties, other appropriate relief relating to the

25



Magnolia or El Dorado facilities, Delek shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or Arkansas in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 60.

63.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Delek is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Delek's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and Arkansas do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Delek's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 33 U.S.C. § 1251, *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits.

64.    This Consent Decree does not limit or affect the rights of Delek or of the United States or Arkansas against any third parties, not party to this Consent Decree (except with respect to the Delek Affiliates as set forth in Paragraph 60), nor does it limit the rights of third parties, not party to this Consent Decree, against Delek or the Delek Affiliates, except as otherwise provided by law.

65.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

66.    Delek hereby covenants not to sue and agrees not to assert any claims related to



the discharge or response activities in connection with the discharge against the United States pursuant to the Clean Water Act, the Oil Pollution Act, or any other state or federal law or regulation for acts or omissions through the Date of Lodging. Delek further covenants not to sue and agrees not to assert any direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund or pursuant to any other provision of law related to the discharge or response activities in connection with the discharge.

## XII.  COSTS

67.   The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and Arkansas shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Delek.

## XIII.  NOTICES

68.   Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

| | |
|---|---|
| As to the United States by email: | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-1-1-11308 |
| As to the United States by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C.  20044-7611<br>Re: DJ # 90-5-1-1-11308 |

27



As to EPA:

Kelly Ann K. Brantner
Attorney Advisor
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460
Brantner.Kelly@epa.gov

Amy Salinas
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
Office of Regional Counsel
1445 Ross Avenue, Suite 1200
Dallas, TX 75202
Tel. (214) 665-8063
Salinas.Amy@epa.gov

Oil Spill & Response Team Leader
US EPA Region 6
1445 Ross Avenue, Suite 1200
Dallas, TX 75202
Smalley.Bryant@epa.gov

As to Arkansas by email: Dara.Hall@arkansas.gov

As to Arkansas by mail: State of Arkansas Attorney General
Assistant Attorney General
Dara Hall
Environmental Division
323 Center Street, Suite 200
Little Rock, Arkansas 72201



| | |
|---|---|
| As to ADEQ by email: | For Technical Issues: |
| | Jarrod Zweifel, Office of Land Resources |
| | Zweifel@adeq.state.ar.us |
| | For Legal Issues: |
| | Lisa Thompson, General Counsel |
| | Office of Law and Policy |
| | thompsonl@adeq.state.ar.us |
| | |
| As to ADEQ by mail: | Jarrod Zweifel, Associate Director |
| | Office of Land Resources |
| | 5301 Northshore Drive |
| | North Little Rock, AR 72118 |
| | |
| As to Delek: | legalnotices@delekus.com |
| | |
| | Regina Jones, Esq. |
| | General Counsel |
| | Delek Logistics Operating, LLC |
| | 7102 Commerce Way |
| | Brentwood, TN 37027 |
| | Regina.Jones@delekus.com |
| | |
| | Misty Foy |
| | Senior Counsel |
| | Delek Logistics Operating, LLC |
| | 7102 Commerce Way |
| | Brentwood, TN 37027 |
| | Misty.Foy@delekus.com |
| | |
| | Todd Lopez |
| | Vice President – Environmental Health and Safety |
| | Delek Logistics Operating, LLC |
| | 7102 Commerce Way |
| | Brentwood, TN 37027 |
| | Todd.Lopez@delekus.com |
| | |
| | LeAnn Johnson Koch |
| | Perkins Coie, LLP |
| | 700 13th Street, NW |
| | Washington, D.C. 20005 |
| | leannjohnson@perkinscoie.com |



69.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

70.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.   EFFECTIVE DATE

71.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV.   RETENTION OF JURISDICTION

72.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Decree.

## XVI.   MODIFICATION

73.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

74.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 51, the Party seeking the modification bears the burden of demonstrating

30



that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII. TERMINATION

75.     After Delek has completed the requirements of Section V (Injunctive Relief), has complied with all other requirements of this Consent Decree, and has paid the civil penalties and any accrued stipulated penalties as required by this Consent Decree, and no sooner than three years after the Effective Date, Delek may serve upon the United States and Arkansas a Request for Termination, stating that Delek has satisfied those requirements, together with all necessary supporting documentation.

76.     Following receipt by the United States and Arkansas of Delek's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Delek has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after consultation with Arkansas, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

77.     If the United States, after consultation with Arkansas, does not agree that the Decree may be terminated, Delek may invoke Dispute Resolution under Section IX. However, Delek shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

## XVIII. PUBLIC PARTICIPATION

78.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent



Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Delek consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Delek in writing that it no longer supports entry of the Decree.

## XIX. SIGNATORIES/SERVICE

79. Each undersigned representative of Delek, Arkansas, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, on behalf of the United States, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

80. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Delek agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XX. INTEGRATION

81. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, the Parties acknowledge that there are no representations,

32



agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXI.   FINAL JUDGMENT

82.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, Arkansas, and Delek. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXII.   28 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

83.    For purposes of the identification requirement of Section 162(f)(2)(A)(ii), 28 U.S.C. § 162(f)(2)(A)(ii), performance of the requirements under Section II (Applicability), Paragraph 5; Section V (Injunctive Relief), Paragraphs 13--18, and related Appendix D; Section VI (Reporting Requirements), Paragraphs 19-20 and 22-24; and Section X (Information Collection and Retention), Paragraphs 53-56 is restitution or required to come into compliance with law.

## XXIII. APPENDICES

84.    The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the Magnolia Facility Additional Alleged SPCC and FRP Violations;

"Appendix B" is the Description of Work Completed by Delek to Address Additional Alleged SPCC and FRP Violations;

33



"Appendix C" is the Compliance Certification; and

"Appendix D" is the Spill Response Supplies and Equipment.

Dated and entered this 8th day of November, 2019

Susan O. Hickey
UNITED STATES DISTRICT JUDGE



Signature page for the Consent Decree in the matter of *United States of America,* et al. *v. Delek Logistics Operating, LLC, and SALA Gathering Systems, LLC*

**FOR THE UNITED STATES OF AMERICA:**

BRUCE S. GELBER

8/28/2019

Date

Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

8/28/2019

Date

ANNA GRACE
Trial Attorney
Mass. Bar No. 686070
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611 Ben Franklin Station
Washington, D.C. 20044-7611

Date

DUANE (DAK) KEES
United States Attorney
Western District of Arkansas

Date

MARK W. WEBB
Assistant United States Attorney
Western District of Arkansas

Signature page for the Consent Decree in the matter of *United States of America*, et al. *v. Delek Logistics Operating, LLC, and SALA Gathering Systems, LLC*

**FOR THE UNITED STATES OF AMERICA:**

BRUCE S. GELBER

Date

Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Date

ANNA GRACE
Trial Attorney
Mass. Bar No. 686070
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611 Ben Franklin Station
Washington, D.C. 20044-7611

8/28/2019
Date

DUANE (DAK) KEES
United States Attorney
Western District of Arkansas

8/28/2019
Date

MARK W. WEBB
Assistant United States Attorney
Western District of Arkansas

Signature page for the Consent Decree in the matter of *United States of America*, et al. *v. Delek Logistics Operating, LLC, and SALA Gathering Systems, LLC*

**FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION 6:**

7/29/19
Date

DAVID W/ GRAY
Acting Regional Administrator
U.S. Environmental Protection Agency, Region 6

7/26/19
Date

AMY SALINAS
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
Office of Regional Counsel

Signature page for the Consent Decree in the matter of *United States of America,* et al. *v. Delek Logistics Operating, LLC, and SALA Gathering Systems, LLC*

**FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY OFFICE OF ENFORCEMENT AND COMPLIANCE ASSURANCE:**

8/29/19
Date

SUSAN PARKER BODINE
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

8/23/19
Date

ROSEMARIE A. KELLEY
Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

8/1/19
Date

MARK POLLINS
Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

7/25/19
Date

KELLY ANN K. BRANTNER
Attorney Advisor
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

37

Signature page for the Consent Decree in the matter of *United States of America*, et al. *v. Delek Logistics Operating, LLC, and SALA Gathering Systems, LLC*

**FOR THE STATE OF ARKANSAS:**

15 July 2019

Date

DARA A. HALL
Ark. Bar No. 96018
Assistant Attorney General
Public Protection Department
Environmental Division
Arkansas Attorney General's Office
323 Center Street, Suite 500
Little Rock, AR 72201
(501) 682-7383 (telephone)
(501) 682-8118 (facsimile)

Signature page for the Consent Decree in the matter of *United States of America,* et al. *v. Delek Logistics Operating, LLC, and SALA Gathering Systems, LLC*

**FOR THE ARKANSAS DEPARTMENT OF ENVIRONMENTAL QUALITY:**

July 15, 2019
Date

BECKY KEOGH
Director
Arkansas Department of Environmental Quality
5301 Northshore Drive
North Little Rock, Arkansas 72118

Signature page for the Consent Decree in the matter of *United States of America*, et al. *v. Delek Logistics Operating, LLC, and SALA Gathering Systems, LLC*

**FOR DELEK:**

July 18, 2019
Date

_____
Alan Moret, Executive Vice President
Delek Logistics Operating, LLC

_____
Frederec Green, Executive Vice President
Delek Logistics Operating, LLC

July 18, 2019
Date

_____
Alan Moret, Executive Vice President
SALA Gathering Systems, LLC

_____
Frederec Green, Executive Vice President
SALA Gathering Systems, LLC

July 18, 2019
Date

_____
Alan Moret, President
Delek Logistics GP, LLC, General Partner
Delek Logistics Partners, LP

_____
Frederec Green, Executive Vice President
Delek Logistics GP, LLC, General Partner
Delek Logistics Partners, LP

Agreed as to form:

7/22/2019
Date

_____
LeAnn Johnson Koch
Perkins Coie, LLP
700 13th Street, NW
Washington, D.C. 20005
Counsel to Delek Logistics Operating, LLC
and SALA Gathering Systems, LLC

40

Signature page for the Consent Decree in the matter of *United States of America,* et al. *v. Delek Logistics Operating, LLC, and SALA Gathering Systems, LLC*

**FOR DELEK:**

July 1?, 2019
Date

_____
Alan Moret, Executive Vice President
Delek Logistics Operating, LLC

_____
Frederec Green, Executive Vice President
Delek Logistics Operating, LLC

July 18, 2019
Date

_____
Alan Moret, Executive Vice President
SALA Gathering Systems, LLC

_____
Frederec Green, Executive Vice President
SALA Gathering Systems, LLC

July 18, 2019
Date

_____
Alan Moret, President
Delek Logistics GP, LLC, General Partner
Delek Logistics Partners, LP

_____
Frederec Green, Executive Vice President
Delek Logistics GP, LLC, General Partner
Delek Logistics Partners, LP

Agreed as to form:

_____
Date

_____
LeAnn Johnson Koch
Perkins Coie, LLP
700 13th Street, NW
Washington, D.C. 20005
Counsel to Delek Logistics Operating, LLC
and SALA Gathering Systems, LLC

**APPENDIX A**

**MAGNOLIA FACILITY ADDITIONAL**
**ALLEGED SPCC AND FRP VIOLATIONS**



# APPENDIX A

## MAGNOLIA FACILITY ADDITIONAL

## ALLEGED SPCC AND FRP VIOLATIONS

The following alleged violations were discovered through EPA's October 15, 2018, inspection of the Magnolia Facility, and October 19, 2018, review of Defendant's SPCC/FRP Plan for the Magnolia Facility.

## I.    Alleged SPCC Violations

1. 40 C.F.R. § 112.5 (a) – Plan was not amended within six months of a change at the facility that materially affects the potential for a discharge described in § 112.1(b).
    a. Construction and installation of Crude Oil Storage Tank #2013 in 2015 (storage capacity 3,689,809 gallons); Delek failed to update the Plan until October 15, 2018.
2. 40 C.F.R. §§ 112.7(a)(3)(i), (ii), (iv), and (v) – Plan is generic in nature and not specific regarding operation of facility. Specifically, Plan lacks the following information:
    a. Type of oil;
    b. Discharge prevention measures, including procedures for routine handling of products;
    c. Countermeasures for discharge discovery, response, and cleanup (both facility's and contractor's resources);
    d. Methods of disposal of recovered materials in accordance with applicable legal requirements;
    e. Diagram of facility piping for multiple facility tanks, and intra-facility piping;
    f. Plan denotes Tank 364 as closed, however inspection documented Tank 364 as out of service, not permanently closed pursuant to 40 C.F.R. 112;
    g. Secondary containment calculation within the Plan does not include displacement volume for Tank 435;
3. 40 C.F.R. § 112.7(b) – Plan does not include prediction of the direction, rate of flow, and total quantity of oil that could be discharged from the truck loading area (see also Paragraph 4(a)).
4. 40 C.F.R. § 112.7(c) – Facility lacks appropriate containment and/or diversionary structures or equipment as follows:
    a. This facility is an active crude oil trucking transport terminal and multiple crude oil transport trucks were observed unloading product at three facility truck unloading areas during the inspection. The SPCC Plan lacked the requisite prediction and calculation for a potential discharge at the truck loading area, and, at the facility, the truck loading areas lack adequate secondary containment.
    b. Secondary containment for bulk storage containers (Tanks 364, 337, and 435) is inadequate (see Paragraph 9(a)).
    c. Secondary containment for bulk storage containers (Tanks 437, 2002, and 2013) is inadequate.

5. 40 C.F.R. § 112.7(g) – Plan does not address the security and control of secondary containment drain valves.
6. 40 C.F.R. § 112.7(i) – Plan does not address brittle fracture evaluation although several field-erected storage tanks could be potentially impacted by catastrophic brittle fracture discharge.
7. 40 C.F.R. § 112.7(j) – Plan does not address conformance with applicable State law rules and regulations.
8. 40 C.F.R. § 112.8(b) – Plan does not address facility drainage from diked and undiked areas.
9. 40 C.F.R. §§ 112.8(c)
   a. Not all bulk storage tanks were constructed with secondary containment to hold capacity of largest container and sufficient freeboard for precipitation. Tanks 364, 337, and 435 lack adequate secondary containment.
   b. 40 C.F.R. § 112.8(c)(3) – the Plan does not denote the following concerning drainage of rainwater from diked areas (as further described in the inspection report):
      i. Bypass valve is normally sealed closed;
      ii. Retained rainwater is inspected to ensure that its presence will not cause a discharge as described in § 112.1(b);
      iii. Bypass valve opened and resealed under responsible supervision;
      iv. Adequate records of drainage are kept.
10. 40 C.F.R. 112.8(c)(6) – Plan does not discuss and lacks the requisite protocols to implement the API 653 and STI SP001 Integrity Testing Standard at the facility, although inspection documented that the facility has completed API 653 inspections for the larger vessels.
11. 40 C.F.R. § 112.8 (d)(1), (2), and (3) – Plan does not address buried piping protocols although extensive buried piping is in use at the facility.
12. 40 C.F.R. § 112.8(d)(5) – Plan does not address vehicles warning signs for oil transfer operations at the facility.

## II.   Alleged FRP VIOLATIONS

1. 112.20(h)(3)(vi) – Response equipment list does not include the following:
   a. Skimmers or pumps;
   b. Hand tools.
2. 112.20(h)(3)(v), 112.20(h)(1)(v), 112.20(h)(3)(i) – Emergency Response Personnel Information does not include the following:
   a. Facility response team title/positions;
   b. Response personnel responsibility;
   c. Response contractor response time;
   d. Response team member job function.
3. Section 1.5 – Plan contained generic small and medium discharge scenarios, but did not contain facility specific scenarios that would facilitate drills and exercises for facility response personnel, including the following for small and medium discharge scenarios:

3



      a. Loading and unloading operations;
      b. Facility maintenance operation;
      c. Facility piping;
      d. Pumping stations and sumps;
      e. Oil storage location;
      f. Age and condition of facility components;
      g. Facility-specific spill potential analysis;
      h. Average most probably discharge for complexes;
      i. 1,000 feet of boom (1 hour deployment time);
      j. Correct amount of boom for complexes;
      k. Oil recovery devices equal to small discharge (2 hour recovery time);
      l. Oil storage capacity for recovered material.

4. 112.20(h)(8)(i) and (ii), 112 Appendix F, Section 1.3.3, 112, Appendix F Section 1.8.1.2
      a. The facility has its own response equipment but does not have any of the required equipment inspection records.



# APPENDIX B

## DESCRIPTION OF WORK COMPLETED BY DEFENDANTS
## TO ADDRESS THE ADDITIONAL
## ALLEGED SPCC AND FRP VIOLATIONS



## APPENDIX B

## DESCRIPTION OF WORK COMPLETED BY DEFENDANTS TO ADDRESS THE ADDITIONAL ALLEGED SPCC AND FRP VIOLATIONS

### I.    SPCC Allegations and Work Completed

Defendants submitted a revised SPCC Plan signed by their professional engineer on February 4, 2019 (the "February 2019 SPCC Plan") containing required updates, and undertook additional corrective measures, as described below.

1.  40 C.F.R. § 112.5 (a) – Plan was not amended within six months of a change at the facility that materially affects the potential for a discharge described in § 112.1(b).
    a.  Construction and installation of Crude Oil Storage Tank #2013 in 2015 (storage capacity 3,689,809 gallons); Delek failed to update the Plan until October 15, 2018.

    ***Delek Response:***
    No action required. As noted in the finding, the plan was updated to include Tank 2013 in October 2018.

2.  40 C.F.R. §§ 112.7(a)(3)(i), (ii), (iv), and (v) – Plan is generic in nature and not specific regarding operation of facility. Specifically, Plan lacks the following information:
    a.  Type of oil;
    b.  Discharge prevention measures, including procedures for routine handling of products;
    c.  Countermeasure for discharge discovery, response, and cleanup (both facility's and contractor's resources);
    d.  Methods of disposal of recovered materials in accordance with applicable legal requirements;
    e.  Diagram of facility piping for multiple facility tanks, and intra-facility piping;
    f.  Plan denotes Tank 364 as closed, however inspection documented Tank 364 as out of service, not permanently closed pursuant to 40 C.F.R. 112;
    g.  Secondary containment calculation within the Plan does not include displacement volume for Tank 435;

    ***Delek Response:***
    a.  Delek permanently closed Tank 364, in accordance with the requirements of 40 C.F.R. Part 112; and
    b.  The February 2019 SPCC Plan describes the type of oil at Table 1 (pp. 7–8), includes a diagram of facility piping for multiple facility tanks, and intra-facility piping at Drawing 6, and includes the displacement volume for Tank 435 at Table 1 (pp. 7–8).

3.  40 C.F.R. § 112.7(b) – Plan does not include prediction of the direction, rate of flow, and total quantity of oil that could be discharged from the truck loading area (see also Paragraph 4(a)).

    ***Delek Response:***
    The February 2019 SPCC Plan includes prediction of the direction, rate of flow, and total quantity of oil that could be discharged from the truck loading area at pp. 15–16.

4.  40 C.F.R. § 112.7(c) – Facility lacks appropriate containment and/or diversionary structures or equipment as follows:



a. This facility is an active crude oil trucking transport terminal and multiple crude oil transport trucks were observed unloading product at three facility truck unloading areas during the inspection. The SPCC Plan lacked the requisite prediction and calculation for a potential discharge at the truck loading area, and, at the facility, the truck loading areas lack adequate secondary containment.

b. Secondary containment for bulk storage containers (Tanks 364, 337, and 435) is inadequate (see Paragraph 9(a)).

c. Secondary containment for bulk storage containers (Tanks 437, 2002, and 2013) is inadequate.

**Delek Response:**

a. Delek raised the levees in containment surrounding Tanks 437, 2002, and 2013, to an elevation of 354.00 to achieve adequate freeboard, thereby providing adequate secondary containment for Tank 437, 2002, and 2013;

b. Defendants professional engineer surveyed the secondary containment for Tank 337 and certified the containment was adequate and meets the requirements of 40 C.F.R. § 112.8(c)(2);

c. Defendants' professional engineer surveyed the secondary containment for Tank 435 and certified the containment was adequate and meets the requirements of 40 C.F.R. § 112.8(c)(2); and

d. See also: responses to Paragraphs 2(a), 3, and 9(a).

5. 40 C.F.R. § 112.7(g) – Plan does not address the security and control of secondary drain valves.

**Delek Response:**
The February 2019 SPCC Plan addresses the security and control of secondary drain (containment) valves at pp. 23–24.

6. 40 C.F.R. § 112.7(i) – Plan does not address brittle fracture evaluation although several field erected storage tanks could be potentially impacted by catastrophic brittle fracture discharge.

**Delek Response:**
The February 2019 SPCC Plan addresses brittle fracture evaluation at p. 20.

7. 40 C.F.R. § 112.7(j) – Plan does not address conformance with applicable State law rules and regulations.

**Delek Response:**
The February 2019 SPCC Plan addresses conformance with applicable State law rules and regulations at p. 24.

8. 40 C.F.R. § 112.8(b) – Plan does not address facility drainage from diked and undiked areas.

**Delek Response:**
The February 2019 SPCC Plan addresses facility drainage control, including from diked and undiked areas, at p. 17.

9. 40 C.F.R. §§ 112.8(c)

a. Not all bulk storage tanks were constructed with secondary containment to hold capacity of largest container and sufficient freeboard for precipitation. Tanks 364, 337, and 435 lack adequate secondary containment.

b. 40 C.F.R. § 112.8(c)(3) – the Plan does not denote the following concerning drainage of rainwater from diked areas (as further described in the inspection report):
   i. Bypass valve is normally sealed closed;
   ii. Retained rainwater is inspected to ensure that its presence will not cause a discharge as described in § 112.1(b);
   iii. Bypass valve opened and resealed under responsible supervision;
   iv. Adequate records of drainage are kept.

***Delek Response:***
The February 2019 SPCC Plan reflects the secondary containment volumes for Tanks 364, 337, and 435 at Table I and Drawings 3 and 5, and describes drainage control procedures, including with respect to (i) secondary containment valves normally remaining closed, (ii) inspection of stormwater for presence of oil or oil sheen prior to release, (iii) only authorized Delek employees releasing stormwater from the secondary containment area, and (iv) stormwater inspection and drainage records, at p. 17. See also: response to Paragraphs 2(a) and 4.

10. 40 C.F.R. 112.8(c)(6) – Plan does not discuss and lacks the requisite protocols to implement the API 653 and STI SP001 Integrity Testing Standard at the facility, although inspection documented that the facility has completed API 653 inspections for the larger vessels.

***Delek Response:***
The February 2019 SPCC Plan discusses the protocols for implementing the API 653 standard at the facility at pp. 17–18, 21–22 and indicates that the tanks are not subject to the SP001 standard for integrity testing at p. 17.

11. 40 C.F.R. § 112.8 (d)(1), (2), and (3) – Plan does not address buried piping protocols although extensive buried piping is in use at the facility.

***Delek Response:***
The February 2019 SPCC Plan addresses underground piping protocols at pp. 18–19.

12. 40 C.F.R. § 112.8(d)(5) – Plan does not address vehicles warning signs for oil transfer operations at the facility.

***Delek Response:***
The February 2019 SPCC Plan addresses vehicle warning signs for oil transfer operations at the facility at p. 19.

## II. FRP Allegations and Work Completed

1. 112.20(h)(3)(vi) – Response equipment list does not include the following:
   a. Skimmers or pumps;
   b. Hand tools.

***Delek Response:***
Delek's amended ERAP includes hand tools in its list of response equipment at p. 36. The planning standards for recovery are met by the OSROs, and supplemented by Delek-owned vac trucks in El Dorado.

2. 112.20(h)(3)(v), 112.20(h)(1)(v), 112.20(h)(3)(i) – Emergency Response Personnel Information does not include the following:

a. Facility response team title/positions;
b. Response personnel responsibility;
c. Response contractor response time;
d. Response team member job function.

*Delek Response:*
Delek's amended ERAP includes the required information regarding Emergency Response Personnel at pp. 25-35.

3. Section 1.5 – Plan contained generic small and medium discharge scenarios, but did not contain facility specific scenarios that would facilitate drills and exercises for facility response personnel, including the following for small and medium discharge scenarios:
   a. Loading and unloading operations;
   b. Facility maintenance operation;
   c. Facility piping;
   d. Pumping stations and sumps;
   e. Oil storage location;
   f. Age and condition of facility components;
   g. Facility-specific spill potential analysis;
   h. Average most probably discharge for complexes;
   i. 1,000 feet of boom (1 hour deployment time);
   j. Correct amount of boom for complexes;
   k. Oil recovery devices equal to small discharge (2 hour recovery time);
   l. Oil storage capacity for recovered material.

*Delek Response:*
Delek's amended Integrated Contingency Plan contains facility-specific scenarios that would facilitate drills and exercises for facility response personnel, including with respect to the above details for small and medium discharge scenarios, at Appendix D, pp. D-8 to D-16.

4. 112.20(h)(8)(i) and (ii), 112 Appendix F, Section 1.3.3, 112, Appendix F Section 1.8.1.2
   a. The facility has its own response equipment but does not have any of the required equipment inspection records.

*Delek Response:*
Delek is currently keeping records of semi-annual inspections on all response equipment.

# APPENDIX C

# CERTIFICATION



Delek Logistics Partners, LP
7102 Commerce Way
Brentwood, Tennessee 37027

July 9, 2019

Anna Grace, Esq.
U.S. Department of Justice
Environmental Enforcement Section
Environment & Natural Resources Division
Ben Franklin Station - P.O. Box 7611
Washington D.C. 20044-7611

> **Re:** **Delek Logistics Operating, LLC, SALA Gathering Systems, LLC, and Delek Logistics Partners, LP ("Delek"), Magnolia Station: EPA SPCC/FRP Inspection**

On October 15 and 19, 2018, the US Environmental Protection Agency ("EPA") conducted an inspection of Delek's Magnolia terminal and its Spill Prevention Control and Countermeasure ("SPCC") Plan and Facility Response Plan ("FRP") to evaluate the facility's compliance with the requirements under the SPCC and FRP regulations. The United States on behalf of EPA identified the alleged violations from the inspection and later alleged additional violations, all of which are identified in Appendix A to the Consent Decree in the matter of *United States of America,* et al. *v. Delek Logistics Operating, LLC, and SALA Gathering Systems, LLC* (the "Consent Decree"). In response to the allegations, Delek Logistics Partners, LP has updated the SPCC and FRP plans for the Magnolia terminal and has taken the steps described in Appendix B to the Consent Decree to address the alleged violations, or has caused Delek Logistics Operating, LLC and/or SALA Gathering Systems, LLC to do so.

I certify under penalty of law that this document and Appendix B to the Consent Decree were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

Sincerely,

Alan Moret
President, Delek Logistics GP, LLC
General Partner of Delek Logistics Partners, LP

cc:     Misty Foy, Esq. (via electronic mail)
        Dara Hall, Esq. (via electronic mail)
        Robert J. Looney, Esq. (via electronic mail)
        Todd Lopez (via electronic mail)
        LeAnn Johnson Koch, Esq. (via electronic mail)



# APPENDIX D


# SPILL RESPONSE SUPPLIES AND EQUIPMENT



## APPENDIX D

### SPILL RESPONSE SUPPLIES AND EQUIPMENT

Caches for the Magnolia, El Dorado, and Smackover Facilities shall include:

    i.    River Boom - 100'

    ii.    Absorbent Boom - 500'

    iii.    Braid Rope - 1 Roll

    iv.    Flash Lights - 4

    v.    Shovels - 2

    vi.    First Aid Kit -1

    vii.    Rubber Gloves - 20

    viii.    Tyvek Suits - 1 box

    ix.    Absorbent Pads - 200 bags

    x.    Debris Bags - 2 rolls

Caches for response vehicles or trailers shall include:

    i.    River Boom - 200'

    ii.    Braid Rope - 1 Roll

    iii.    Topo map in electronic format

    iv.    Flash Lights - 4

    v.    Shovels - 2

    vi.    First Aid Kit - 1

    vii.    Rubber Gloves - 50

    viii.    Safety Glasses - 4

    ix.    Tyvek Suits - 1 box

    x.    Absorbent Pads - 40 bags

    xi.    Debris Bags - 2 rolls

